Filed 12/8/14

**CERTIFIED FOR PARTIAL PUBLICATION**[*]

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>RENEE ROBINSON,<br><br>    Defendant and Appellant. | E056791<br><br>(Super.Ct.No. RIF1104807)<br><br>OPINION |

APPEAL from the Superior Court of Riverside County. Thomas E. Kelly, Judge.

(Retired judge of the Santa Cruz Super. Ct. assigned by the Chief Justice pursuant to

art. VI, § 6 of the Cal. Const.) Affirmed in part; reversed in part with directions.

---

[*] Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of part 2 of the discussion.

1

Lise M. Breakey, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Barry Carlton, Teresa Torreblanca, Brendon W. Marshall, Charles C. Ragland and Robin Urbanski, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant Renee Robinson was charged with both aggravated mayhem, in violation of Penal Code section 205, and mayhem, in violation of Penal Code section 203 (sometimes hereafter called "simple mayhem"). Both charges were based on a single incident in which defendant poured scalding water over her husband's head, resulting in serious burns to his face and various parts of his body, with residual scarring. She contends that she could not be convicted of both offenses based on the same act because simple mayhem is a lesser included offense of aggravated mayhem.

The argument defendant originally made has been nullified by *People v. Santana* (2013) 56 Cal.4th 999, which was decided after the conclusion of the initial briefing in this case. However, after supplemental briefing requested by the court and further oral argument, we conclude that section 203 is a necessarily included lesser offense of section 205. Accordingly, we will reverse defendant's conviction for violation of section 203. We will also direct the trial court to correct defendant's sentence as discussed below.

2

## PROCEDURAL HISTORY

Defendant was charged with aggravated mayhem (count 1; Pen. Code, § 205);[1] torture (count 2; § 206); mayhem (count 3; § 203); assault with a deadly weapon, to wit, boiling water, and by force likely to cause great bodily injury (count 4; § 245, subd. (a)(1) [*sic*]);[2] and domestic battery with corporal injury (count 5; § 273.5, subd. (a)).  The information also alleged that in the commission of counts 4 and 5, defendant personally inflicted great bodily injury under circumstances involving domestic violence within the meaning of sections 12022.7, subdivision (e) and 1192.7, subdivision (c)(8).

A jury convicted defendant on all counts and found the great bodily injury allegations true.  The court sentenced defendant to "seven years to life" on counts 1 and 2,[3] and to a determinate term of four years on count 4, plus five years for the great bodily

---

[1] All further statutory citations refer to the Penal Code unless another code is specified.

[2] Assault with a deadly weapon other than a firearm is codified in section 245, subdivision (a)(1); assault by means of force likely to cause great bodily injury is codified in section 245, subdivision (a)(4).

[3] Section 205 carries a term of life in prison with the possibility of parole; section 206 carries a term of life in prison.  (§ 206.1.)  A term of life with the possibility of parole does not have a minimum determinate term of seven years; rather, a person sentenced to such a term first becomes eligible for parole in seven years.  (§ 3046, subd. (a)(1).)

injury enhancement. The court imposed and stayed sentences on counts 3 and 5, pursuant to section 654. The sentences on counts 1, 2 and 4 were all made concurrent.

Defendant filed a timely notice of appeal.

### FACTS

Because of the nature of the issues raised on appeal, a brief summary of the facts suffices.

Defendant and the victim, Sam Wright, were married in 1999. During the marriage, Wright had an affair which resulted in the birth of a child in 2009. On September 15, 2011, defendant had been drinking rum and possibly smoking crack cocaine and haranguing Wright for about an hour about the child, saying that he took better care of the child than he did of her. She put two pots of water on the stove and heated them. She walked up behind Wright, who was seated in the living room, and poured the contents of a three- to four-quart pot of scalding water onto his head, shoulders, stomach and back. Wright said the pain was "the worst pain [he'd] ever felt," about nine and a half out of 10.

Wright went outside and rolled on the wet grass. A neighbor called the paramedics. Deputy Sheriff Butcher, who was among the responders, observed that Wright's skin was starting to bubble and looked like it was melting off.

Wright suffered second degree burns of varying depth on his face, shoulders, back, stomach, thigh and neck.[4] He was hospitalized for about two weeks in the burn unit at Arrowhead Regional Hospital. By the time of the trial, Wright still had some scarring on his left thigh and on his shoulders, back and abdomen. The director of the burn unit testified that he could not say whether Wright would be permanently disfigured.

## DISCUSSION

### 1.

### SIMPLE MAYHEM IS A NECESSARILY INCLUDED LESSER OFFENSE OF AGGRAVATED MAYHEM

Defendant was convicted of both aggravated mayhem and simple mayhem. (§§ 203, 205.) She contends that because simple mayhem is a necessarily included lesser crime with respect to aggravated mayhem, her conviction on the lesser offense must be reversed.

A defendant may be convicted of more than one offense based on the same act or a single course of conduct. (§ 954; *People v. Reed* (2006) 38 Cal.4th 1224, 1227.) However, a defendant may not be convicted of two such offenses if one is a necessarily included lesser offense of the other. (*People v. Reed*, at p. 1227.) For purposes of determining whether a defendant may be convicted of multiple charged offenses, courts

---

[4] Second degree burns can range from superficial, albeit worse than first degree burns, to "deep dermal," i.e., penetrating deep into the dermis.

5

use the statutory elements test to determine whether one offense is necessarily included in the other.  (*Id*. at p. 1230.)  Under that test, if the statutory elements of the greater offense include all of the statutory elements of the lesser offense, such that the greater offense cannot be committed without also committing the lesser offense, the latter is necessarily included in the former.  (*Ibid; People v. Smith* (2013) 57 Cal.4th 232, 240.)  Accordingly, we apply the statutory elements test to determine whether section 203 is necessarily included in section 205.[5]

Section 203 provides:  "Every person who unlawfully and maliciously deprives a human being of a member of his body, or disables, disfigures, or renders it useless, or cuts or disables the tongue, or puts out an eye, or slits the nose, ear, or lip, is guilty of mayhem."

Section 205 provides, in pertinent part:  "A person is guilty of aggravated mayhem when he or she unlawfully, under circumstances manifesting extreme indifference to the physical or psychological well-being of another person, intentionally causes permanent

---

[5] There are two tests for determining whether an offense is a necessarily included lesser offense.  Under the accusatory pleading test, if the facts actually alleged in the accusatory pleading include all of the elements of the lesser offense, the latter is necessarily included in the former.  (*People v. Reed*, *supra*, 38 Cal.4th at pp. 1227-1228.)  The accusatory pleading test applies in determining whether a trial court must instruct the jury on an uncharged lesser offense.  (*Ibid*.)  It does not apply in determining whether a charged offense is necessarily included in another charged offense, as in this case.  (*Id*. at pp. 1228-1231.)

disability or disfigurement of another human being or deprives a human being of a limb, organ, or member of his or her body."

In her opening brief, defendant contends that section 203 is a lesser included offense of section 205 because serious bodily injury is an element of both offenses, even though it is not explicitly an element of section 205. She contends that permanent disfigurement or disability or the deprivation of a limb, organ or bodily member is necessarily a serious bodily injury, and because case law has held that serious bodily injury is an element of section 203, a violation of section 205 necessarily also constitutes a violation of section 203. Defendant's argument has been nullified, however, by *People v. Santana*, *supra*, 56 Cal.4th 999 (*Santana*). In that case, which was decided after the conclusion of initial briefing in this case, the California Supreme Court held that serious bodily injury is *not* an element of section 203 and that CALCRIM No. 801, which included a requirement that the prosecution must prove that the defendant caused serious bodily injury, is erroneous. (*Santana*, at pp. 1004-1011.) The court specifically noted that section 203 can be violated by cutting the tongue or slitting the nose, ear or lip, none of which are necessarily serious bodily injuries. (*Santana*, at p. 1010.)

In response to an argument made by the Attorney General in her respondent's brief, defendant also asserts that courts have held that section 203 is a lesser included offense of section 205 because the sole difference between the two offenses is that aggravated mayhem is a specific intent crime, while simple mayhem is a general intent crime. The only case she cites in support of that assertion is *People v. Hill* (1994) 23

7

Cal.App.4th 1566. In that case, the court observed that section 203 is a lesser included offense of section 205, and that section 205 requires specific intent while section 203 does not. (*People v. Hill*, at p. 1569 & fn. 2.) However, the case did not present an issue as to the section 203's status as a lesser included offense. Consequently, the court did not engage in any analysis of that question, and its observation is dictum. As the Attorney General points out, although several opinions refer to section 203 as a lesser included offense of section 205, no court has actually addressed and resolved that issue. (See, e.g., *People v. Gonzalez* (2012) 210 Cal.App.4th 875, 888; *People v. Pre* (2004) 117 Cal.App.4th 413, 418; *People v. Park* (2003) 112 Cal.App.4th 61, 65-66; *People v. Quintero* (2006) 135 Cal.App.4th 1152, 1167.)

Following oral argument, we asked the parties for further briefing on whether simple mayhem is a lesser included offense of aggravated mayhem. We asked them to address the legislative history of section 205 and whether it sheds any light on that question.[6] Having considered the parties' supplemental briefing and further oral

---

[6] We provided the parties with a packet of legislative history materials which were previously compiled by the California Judicial Center Library. We take judicial notice of those documents contained in the packet which we cite in this opinion. (Evid. Code, § 452, subd. (c); see *Arce v. Kaiser Foundation Health Plan, Inc.* (2010) 181 Cal.App.4th 471, 484 [reports of legislative committees and commissions are part of a statute's legislative history and may properly be subject to judicial notice as official acts of the Legislature].)

argument, and having further examined the issue, we now conclude that simple mayhem is a necessarily included lesser offense of aggravated mayhem.

There is an ambiguity in section 203 which allows that statute to be read either as identical with section 205, except for the elements of intent and mental state,[7] or as covering a more limited scope of injury than does section 205. In addition to the three specific types of injury it penalizes ("cuts or disables the tongue, or puts out an eye, or slits the nose, ear, or lip"), section 203 addresses the disabling, disfiguring, deprivation of or rendering useless a "member" of a person's body. The word "member" is inherently ambiguous. In *People v. Page* (1980) 104 Cal.App.3d 569, the court noted that "member" is defined in varying ways: "'A part or organ of the animal body, especially a limb' (Funk & Wagnalls Standard College Dict. (1974)); as a 'general term applied to any integral part or vital organ of an organized animal body, or, more widely, to any integral or distinguishable constituent part of a whole which is considered as organic . . .' (The Random House Dict. of the English Language (1966)); and as 'a bodily part or organ . . . *specif*: a part (as a limb) that projects from the main mass of the body' (Webster's Third New Internat. Dict. (1965))." (*Id*. at p. 577.) Because a bodily "member" can be limited to the head and the limbs but can also include any integral part or distinguishable constituent of the body, the language of section 203 (disfiguring,

---

[7] Section 205 requires that the perpetrator act both in a manner "manifesting extreme indifference to the physical or psychological well-being of another person" and with the intent of causing permanent disability or disfigurement.

9

disabling or depriving of a "member" of the body) can be read as coextensive with the language of section 205 (causing permanent disability or disfigurement of another human being or depriving another person of a limb, organ or member).  However, it is equally arguable that section 205 more broadly penalizes any disfigurement, disability or deprivation of any portion of the body, if the act is committed with the requisite intent and mental state, while section 203 focuses on disfigurement, disability or deprivation of a "member" of the victim's body, defined narrowly.  This is how the court perceived the difference between the two statutes in *People v. Ferrell* (1990) 218 Cal.App.3d 828: section 205 "broadly prohibits intentionally causing 'permanent disability or disfigurement . . .  or depriv[ing] a human being of a limb, organ, or member of his or her body,' while the injuries which are the subject of section 203 are more narrowly and precisely defined." (*Id.* at p. 835.)[8]  Under the latter reading, scarring to the torso would not qualify as disfigurement of a member of the body.  Under that reading, a violation of section 205 could be committed without also committing a violation of section 203. Therefore, in order to determine whether section 203 is a necessarily included lesser offense of section 205, we must resolve the ambiguity in section 203.

---

[8]  The issue in *People v. Ferrell*, *supra*, 218 Cal.App.3d 828, is not whether section 203 is a lesser included offense of section 205 but whether a defendant can simultaneously entertain both the intent to cause permanent disability or disfigurement and the intent to kill.  (*People v. Ferrell*, at pp. 833-836.)

10

Our role in interpreting a statute is to determine and effectuate the intent of the Legislature.  If the statutory language is unambiguous, its plain meaning controls. "Where, however, the statutory language is ambiguous on its face or is shown to have a latent ambiguity such that it does not provide a definitive answer, we may resort to extrinsic sources to determine legislative intent.  [Citations.]  Under this circumstance, 'the court may examine the context in which the language appears, adopting the construction that best harmonizes the statute internally and with related statutes.' [Citation.]  'In such cases, a court may consider both the legislative history of the statute and the wider historical circumstances of its enactment to ascertain the legislative intent.'" (*Lewis v. County of Sacramento* (2001) 93 Cal.App.4th 107, 119-120.)  Because of the ambiguity in section 203, we may look to extrinsic aids to attempt to harmonize it with section 205.

When the Legislature enacted section 205,[9] it apparently understood section 203 to apply narrowly, under what it understood to be the common law definition of "member of the body," which did not include "body organs, or the face itself."  It understood section 203 to cover only "dismemberment, and injuries to the eye, nose, tongue, ear, and lip." (See Assem. Com. on Public Safety, Analysis of Sen. Bill No. 589 (1987-1988 Reg. Sess.).)  This perceived limitation is not, however, consistent with the actual wording of section 203, which also penalizes disfigurement or disabling of a bodily member.

---

[9]  Section 205 was introduced as Senate Bill No. 589 (1987-1988 Reg. Sess.).

11

Moreover, although the Legislature was apparently unaware of it, by 1987 the scope of disfiguring injuries punishable under section 203 had already begun to be expanded through judicial decisions. In *People v. Keenan* (1991) 227 Cal.App.3d 26 (*Keenan*), the court affirmed a conviction for simple mayhem based on the infliction of cigarette burns on the victim's breasts. In response to the defendant's argument that the resulting scarring was too minor to amount to mayhem, the court stated:

"Mayhem, an older form of the word 'maim,' was at common law restricted to injuries that 'substantially reduced the victim's formidability in combat' [citation]; the rationale being to preserve the king's right to the military services of his subjects. Gradually, the crime evolved to include injuries that did not affect the victim's fighting ability. Our current mayhem statute is based upon the Coventry Act of 1670, which first broadened mayhem to include mere disfigurement. That statute imposed a sentence of death on any person who, with malice aforethought, 'cut out or disable[d] the tongue, put out an eye, slit the nose, cut off a nose or lip, or cut off or disable[d] any limb or member of any other person.' [Citation.] [¶] While many contemporary mayhem cases involve conduct that squarely fits the traditional understanding of the offense [citations], courts recently have expanded mayhem to include acts not within the original definition of the crime. Thus, in *People v. Newble* (1981) 120 Cal.App.3d 444 [174 Cal.Rptr. 637] the court upheld a conviction for mayhem based upon the infliction of a three-inch long facial wound and observed, '"the modern rationale of the crime [of mayhem] may be said to be the preservation of the *natural completeness and normal appearance* of the human

12

face and body."' (120 Cal.App.3d at p. 451, italics added.) Similarly, in *People v. Page* (1980) 104 Cal.App.3d 569, 578 [163 Cal.Rptr. 839] the court reasoned that '[t]he law of mayhem as it has developed protects the integrity of the victim's person,' and affirmed a mayhem conviction based on the application of permanent tattoos to the victim's breast and abdomen." (*Keenan*, *supra*, 227 Cal.App.3d at pp. 33-34, fn. omitted.) *Keenan* recognized these cases as "practical and proper applications of an old statute to modern-day reality." (*Ibid.*; accord, *Santana*, *supra*, 56 Cal.4th at pp. 1003-1004.)

In any event, regardless of the whether the Legislature correctly understood the scope of section 203 when it enacted section 205, the legislative history of section 205 shows that the Legislature was not concerned with whether the types of injuries which could constitute aggravated mayhem would also constitute simple mayhem, but rather with the intent and mental state underlying the infliction of the injuries. The various committees which examined the bill recognized that the proposed legislation was in response to recent cases involving severe injuries apparently inflicted with the sadistic intent of causing pain, disfigurement or disability rather with the intent to kill the victim. The bill's author thought that the penalties for such acts, which would not qualify as attempted murder, were insufficient if prosecuted either under section 203 or as

13

aggravated assault, and that section 205 was needed to provide adequate punishment.[10] (Sen. Com. on Judiciary, Analysis of Sen. Bill No. 589 (1987-1988 Reg. Sess.), pp. 2-5; Assem. Com. on Public Safety, Analysis of Sen. Bill No. 589 (1987-1988 Reg. Sess.), pp. 2-3; Sen. Rules Com., Off. of Sen. Floor Analyses, 3rd reading analysis of Sen. Bill No. 589 (Reg. Sess. 1987-1988), as amended Apr. 9, 1987; Assem. Public Safety Com. Republican Analysis of Sen. Bill No. 589 (Reg. Sess. 1987-1988), as amended June 23, 1987.) The Assembly's Public Safety Committee *opined* that the new legislation would penalize injuries not encompassed by section 203 and that "[a]s currently defined, mayhem would probably not be a lesser included offense of aggravated mayhem" (see Assem. Com. on Public Safety, Analysis of Sen. Bill No. 589 (1987-1988 Reg. Sess.), pp. 2-3; Assem. Public Safety Com. Republican Analysis of Sen. Bill No. 589 (Reg. Sess. 1987-1988), as amended June 23, 1987), but there is nothing in its analysis or elsewhere that indicates an *intention* to criminalize types of injuries which would not be penalized by section 203. From this, we conclude that the Legislature was concerned only with adequate punishment for mayhem committed with the particular intent and mental state the Legislature considered worthy of harsher punishment. Accordingly, we must look elsewhere to determine whether section 203 is a necessarily lesser included offense of section 205.

---

[10] One of the notorious cases the Legislature relied upon, *People v. Singleton* (1980) 112 Cal.App.3d 418, is actually inapposite because Singleton *was* convicted of and sentenced for attempted murder. (*Id.* at pp. 420-422.)

In *Santana*, *supra*, 56 Cal.4th 999, the California Supreme Court adopted the rationale stated in *Keenan*, *supra*, 227 Cal.App.3d 26 and in *People v. Page*, *supra*, 104 Cal.App.3d 569, for the modern understanding of simple mayhem. (*Santana*, at pp. 1003-1004.) The court stated: "Though section 203 contains 'verbal vestiges' of the common law and the Coventry Act of 1670, '"the modern rationale of the crime [of simple mayhem] may be said to be the preservation of the natural completeness and normal appearance of the human face and body, and not, as originally, the preservation of the sovereign's right to the effective military assistance of his subjects."' [Citations.] In other words, section 203 'protects the integrity of the victim's person.' [Citations.]" (*Santana*, at p. 1004.) Under that rationale, scarring of the torso, which damages the natural appearance of the body, constitutes simple mayhem even though the torso is arguably not a bodily member. Further, under the rationale espoused by the court in *Santana*, an act which "deprives a human being of a member of his body, or disables, disfigures, or renders it useless" (§ 203) cannot be distinguished from "causes permanent disability or disfigurement of another human being or deprives a human being of a limb, organ, or member of his or her body" (§ 205), except by the intent and mental state with which the act is committed. Consequently, we conclude that under the statutory elements test, simple mayhem in violation of section 203 is a necessarily included lesser offense of aggravated mayhem in violation of section 205. Accordingly, defendant's conviction on count 3 must be reversed.

15

2.

SECTION 654 BARS IMPOSITION OF AN UNSTAYED SENTENCE ON ALL

COUNTS EXCEPT COUNT 1

Section 654 provides, in pertinent part: "(a) An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision." Where separate punishment is barred by section 654, the court should impose a sentence and stay it. Imposing a concurrent term does not satisfy section 654. (*People v. Deloza* (1998) 18 Cal.4th 585, 591-592.)

Here, all five counts in the information were based on the single act of pouring scalding water over the victim's head. The trial court imposed and stayed the sentence on counts 3 and 5 (mayhem and domestic violence resulting in corporal injury, respectively), but imposed unstayed concurrent sentences on counts 2 and 4 (torture and assault with a deadly weapon or by force likely to cause great bodily injury, respectively). The parties agree that the sentences on counts 2 and 4 must also be stayed, and we concur.

DISPOSITION

Defendant's conviction on count 3 is reversed. The judgment is otherwise affirmed. The matter is remanded for correction of the sentence. The superior court clerk shall issue an amended abstract of judgment and amended sentencing minutes reflecting the reversal of count 3 and reflecting that the sentences on counts 2, 4, and 5, including any enhancements, are stayed pursuant to Penal Code section 654. The amended abstract of judgment and the amended sentencing minutes shall also state that the sentence on counts 1 and 2 is life in prison with the possibility of parole, not seven years to life. The superior court clerk shall provide a copy of the amended abstract and sentencing minutes to the parties and to the Department of Corrections and Rehabilitation.

CERTIFIED FOR PARTIAL PUBLICATION

McKINSTER
Acting P. J.

We concur:

RICHLI
J.

MILLER
J.

17